No. 2542.—W. H. CLAY et als. v. E. O'BRIEN.

Where the heirs of a deceased person seek by petitory action to recover real estate from the owners who have acquired title thereto at a judicial sale to enforce the payment of taxes due by said property, the burden falls upon the heirs of showing that the proceedings to enforce the payment of the taxes assessed on the lands were irregular and illegal. If in such an action the record discloses that the requirements of the law have been complied with in making the sale, then, and in such case the title will be declared good and valid, and the petitory action by the heirs will be dismissed.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley*, J. *A. & M. Voorhies*, for plaintiffs and appellees. *Cotton & Levy*, for defendants and appellants.

HOWELL, J. This is a petitory action, in which the plaintiffs, as legatees of Mrs. A. M. Helfer, seek to recover of defendant twelve lots of ground in the square bounded by Bienville, Napoleon, Solomon and Conti streets, in New Orleans, purchased by said Mrs. Helfer on twenty-seventh May, 1837. The defendant sets up title under a sale made on twenty-eighth January, 1860, by virtue of an order of seizure and sale in the case of C. Roselius, receiver, v. Three Squares of Ground, instituted under the fifth, sixth and seventh sections of act No. 49 of 1839, to enforce the mortgage created by said act in favor of the New Orleans Draining Company to secure the tax assessed on the land to·

be drained; he avers that the said sale having been made in conformity to law can not thus be attacked collaterally, and asks that if he be evicted he be paid the price of the adjudication before possession is given to plaintiffs. Eugene Lasere, the adjudicator at said sale, intervened as defendant, and from a judgment in favor of plaintiffs both defendants have appealed.

*First*—Plaintiffs deny that there was a compliance with the said act of 1839 in making the assessment, appraisement and advertisement of the said property.

It seems from the record that the assessment was made on the whole square bounded by the above named streets, as belonging to unknown owners, and the advertisement was made of the whole square. The act directed a plan of the property within the draining district or section to be made by the company, showing as much as possible the subdivision of the property and the names of the proprietors; authorized the necessary assessment to be made on each portion of the property as found and a mortgage and privilege decreed thereon, which decree was to be recorded and an order of seizure and sale allowed against the property in the name of the proprietors, or *in rem* as belonging to unknown persons, if, notwithstanding diligent inquiry, the draining company should not be able to ascertain who are the owners, and upon making certain advertisements, containing a clear description of the property referred to, the fact of the assessment, and that the owners are unknown, in order that the owners may appear, and upon the appointment of a curator *ad hoc*. These formalities appear to have been observed. The act also directed the property to be sold without appraisement.

*Second*—The seizing and selling for tax three squares of ground is irregular and in violation of law.

In what respect it is irregular and illegal is not explained. The proceeding was against the said property as belonging to unknown owners, and we do not see in it anything contrary to the provisions of the act in question or any other law relating to the subject. The squares were correctly described and the necessary notices published.

*Third*—The company could not seize and sell the property of plaintiffs to pay the tax owing by other parties. We find in the record no evidence that such was the case.

*Fourth*—The seizure and advertisement of the square bounded by certain streets to pay $400 56, and selling one-half thereof for $650, and staying the sale for the other half, as shown by the sheriff's return, is irregular and the whole proceedings are vitiated thereby. And if, as contended, it was seized and sold to pay half the tax, then the proceedings were defective, as they do not show that the writ was enforced for such purpose.

The record shows that the said square was assessed for $400 56 with ten per cent. interest from twentieth January, 1851, and costs of advertising, the one-half which, at the day of sale, in 1860, with the city and State taxes due amounted to not greatly below the price of adjudication. It has been decided by this court that the half of a piece or tract of land can be legally sold under an advertisement of the whole if there is a legal cause for staying the sale of the other half. See Losee *v.* DeLacey, 23 An. 287. As the advertisements were intended in part to give owners an opportunity to make themselves known, we may well presume from the proceedings that the owner of the half not sold made himself known and paid his proportion of the assessment on the whole square. At any rate there is no such irregularity in this respect as to render the sale absolutely null.

*Fifth*—The sale was in palpable violation of sections five and seven, in selling the property for cash; it should have been sold on one and two years' credit as therein directed.

By the said sections the owner had the privilege of giving notes at one and two years if his tax exceed $100, and have the property sold accordingly, but it is not made the duty of the company to so sell.

*Sixth*—The act provides that each owner's property shall be assessed and proceedings carried on against him for the collection of the assessment. This is true where the owners are known or can be ascertained, but not where the owners are unknown.

*Seventh*—The proceedings do not show that the receiver used due diligence to discover the owners of this property, and the sale of it as the property of unknown owners was not warranted. The question of what was due diligence at the time, on the part of the receiver, can not properly be determined in this suit, to which he is not a party, and we will presume he did his duty. Had the law prescribed what particular acts would constitute diligent inquiry, it would present a question like that of particular formalities necessary in making such forced sales. The facts that Mrs. Helfer's title was recorded in 1837; that her succession was opened in the probate court and the plaintiffs were put in possession of the property as her legatees; and were represented by a tutor and undertutor, are not facts that the receiver was bound to know. The assessment rolls of the city or State are not in evidence, and we can not say in whose name this property was assessed, conceding that it was the duty to have the said rolls examined.

*Eighth*—The advertisement, seizure and sale of "square No. 373, bounded by Bienville, Solomon, Conti and Napoleon streets," where the square was described as No. 25 in the act of sale to Mrs. Helfer, and on a plan in the office of the notary who passed said act, is not such a description as to serve as a notice of the proceedings to plaintiffs, the owners of half of said square.

The names of the streets bounding the square were given, and the difference in the numbers given in the two plans, is not fatal. The plan of the company, showing the No. 373, was made official by the law. Our conclusion is that the law was complied with in the proceedings under which defendants purchased.

It is therefore ordered that the judgment appealed from be reversed, and that there be judgment in favor of defendants with costs in both courts.